UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. Action No. 12-cr-266 (ABJ) (3) |
| ORAL GEORGE THOMPSON, a.k.a. "Chad," | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

On March 31, 2017, defendants Dwight Knowles and Oral Thompson were convicted after a jury trial of conspiring to distribute, and possess with the intent to distribute, five kilograms or more of cocaine on board an aircraft registered in the United States or owned by a United States citizen, in violation of 21 U.S.C. §§ 959(b) (2012),[1] 960 and 963. On May 1, 2017, defendant Thompson filed a motion for a judgment of acquittal notwithstanding the verdict, or in the alternative, a new trial, under Federal Rules of Criminal Procedure 29 and 33. Def. Thompson's Mot. for J. of Acquittal Notwithstanding Verdict, or in the Alternative, for New Trial [Dkt. # 235] ("Def.'s Mot."); Mem. in Supp. of Def.'s Mot. [Dkt. # 236] ("Def.'s Mem."). Thompson argues that the evidence at trial failed to prove an essential element of the charge: "that the aircrafts allegedly employed during the life of the conspiracy were in fact 'aircraft registered in the United States or owned by a United States citizen.'" Def.'s Mem. at 3. Because there was ample evidence to support the jury's verdict, Thompson's motion will be denied.

---

1   Congress amended section 959 on May 16, 2016, to add a new subsection "a," to add a new subsection "b," and to "redesignat[e] subsections (b) and (c) as subsections (c) and (d) respectively." Transnational Drug Trafficking Act of 2015, Pub. L. No. 114-154, 130 Stat. 387 (2016). Because defendants were charged under the previous iteration of the statute, the Court will refer to the statute as it existed in 2012.

## BACKGROUND

On December 12, 2012, a grand jury returned an indictment charging defendants Oral George Thompson, Dwight Knowles, Sergio Gonzalez-Bencomo, Dario Davis, and Trevor Ferguson with conspiring to possess with the intent to distribute, and to distribute, five kilograms or more of cocaine on board an aircraft registered in the United States or owned by a United States citizen, in violation of 21 U.S.C. §§ 959(b), 960(b)(1)(B), and 963, and 18 U.S.C. § 2. Indictment [Dkt. # 3]. Defendant Thompson was extradited from Colombia on March 28, 2014. Arrest Warrant [Dkt. # 39].

The conspiracy in this case involved the use of U.S.-registered aircraft to transport cocaine from Colombia and Venezuela to Honduras. Thompson and Knowles were on the transportation side of the transaction, and they dealt with representatives of the suppliers on the other side of the transaction. At one point, Knowles was sent to sit with one of the suppliers' representatives to serve as a human "guarantee" that the plane would arrive, and in connection with the May 2012 transaction at the center of the trial, he recruited his nephew, Dario Davis, who held a pilot's license, to join the conspiracy and fly the plane. The government's evidence focused on a particular plane, a Beechcraft 1900 with the tail number N157PA. On May 28, 2012, co-conspirators Dario Davis and Trevor Ferguson flew the N157PA plane from the Bahamas to Haiti. Davis and Ferguson were supposed to pick up an additional pilot in Haiti, but the plane was detained upon landing by Haitian authorities, and Davis and Ferguson were arrested.

The case proceeded to trial against Thompson and Knowles on March 14, 2017. On March 31, 2017, the jury returned guilty verdicts against both defendants. Verdict Form [Dkt. # 229] (Knowles); Verdict Form [Dkt. # 231] (Thompson). On May 1, 2017, defendant Thompson filed a motion for a new trial, or in the alternative, for a judgment of acquittal notwithstanding the

verdict. Def.'s Mot.; Def.'s Mem. The government opposed the motion on May 19, 2017. Gov't's Opp. to Def.'s Mot. [Dkt. # 240] ("Opp."). Thompson filed a reply on July 7, 2017. Reply to Gov't's Opp. [Dkt. # 256] ("Reply").[2]

## STANDARD OF REVIEW

**I.    Rule 29 Motion for Judgment of Acquittal**

Federal Rule of Criminal Procedure 29(c) requires a court to grant a defendant's motion for a judgment of acquittal after a verdict has been rendered for any "offense for which the evidence is insufficient to sustain a conviction." In reviewing a post-verdict motion for judgment of acquittal under Rule 29, a court "must view the evidence in the light most favorable to the verdict." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). In evaluating the sufficiency of the evidence, "[t]he reviewing court considers only the 'legal' question of 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (emphasis in original), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Shmuckler*, 792 F.3d 158, 161–62 (D.C. Cir. 2015). The standard for a Rule 29 motion is "very high," and the evidence to support a conviction does "not need to be overwhelming." *United States v. Pasha*, 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015).

The Rule 29 standard preserves the jury's role "as weigher of the evidence" and "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. So the "evidence need not exclude every reasonable hypothesis of innocence or be

---

2    A motion for a new trial under Rule 33, and a motion for a judgment of acquittal under Rule 29, must generally be filed within fourteen days after the verdict. Fed. R. Crim. P. 33(b)(2); Fed. R. Crim. P. 29(c)(1). The Court granted defendants' motion for additional time to file any post-trial motions, Min. Order (Mar. 31, 2017), so Thompson's motion is timely.

3

wholly inconsistent with every conclusion except that of guilt" to suffice to sustain a guilty verdict. *United States v. Bostick*, 791 F.3d 127, 137 (D.C. Cir. 2015), quoting *United States v. Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991).

## II. Rule 33 Motion for a New Trial

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Trial courts enjoy broad discretion in ruling on a motion for a new trial." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014). While the Rules do "not define 'interests of justice,'" the D.C. Circuit has instructed that "granting a new trial motion is warranted only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'" *Id.*, quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990). "In considering a new trial motion based on the weight of the evidence the district judge 'weighs the evidence and evaluates the witnesses' credibility and decides whether a serious miscarriage of justice may have occurred.'" *United States v. Dale*, 991 F.2d 819, 838 (D.C. Cir. 1993), quoting *Rogers*, 98 F.2d at 213.

## ANALYSIS

**I. Thompson's Rule 29 motion will be denied because a rational trier of fact could conclude that there was an agreement to use a U.S. registered airplane, and that the airplane at issue was in fact registered in the United States.**

Thompson's sole argument is that the government failed to introduce sufficient evidence to prove beyond a reasonable doubt that "the aircrafts allegedly employed during the life of the conspiracy were in fact 'aircraft registered in the United States or owned by a United States citizen.'" Def.'s Mem. at 3.

The first problem with this argument is that defendants in this case were charged with conspiracy to distribute, or possess with the intent to distribute, the cocaine on board an aircraft

4

owned by a United States citizen or registered in the United States. The critical element of the offense of conspiracy is the agreement to violate the law; it is not necessary that the crime actually be accomplished.

"Conspiracy requires an agreement – and in particular an agreement to do an unlawful act – between or among two or more separate persons." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). So, to convict a defendant of a conspiracy offense, "the Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)." *Smith v. United States*, 568 U.S. 106, 110 (2013). Because "the fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive criminal offense,'" *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016), quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997), it is not necessary that the object of the conspiracy be achieved. While conspirators must "pursue the same criminal objective," the law does not require a conspirator to "agree to commit or facilitate each and every part of the substantive offense." *Salinas*, 522 U.S. at 63. "A defendant must merely reach an agreement with the specific intent that the underlying crime be committed by some member of the conspiracy." *Ocasio*, 136 S. Ct. at 1429 (internal quotations and citation omitted).[3]

---

3     For example, a person can be convicted of conspiring to distribute cocaine even if the substance seized turns out to be a different narcotic. *See United States v. Williams*, 553 U.S. 285, 300 (2008), citing 2 W. LaFave, Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003).

Here, there was sufficient evidence introduced from which a rational trier of fact could conclude that defendants Thompson and Knowles conspired to transport cocaine on an aircraft registered in the United States.[4]

The evidence of the existence of an agreement was introduced through cooperating witnesses including Matthew Ferguson, Jose Polonia Vergara, and Dario Davis, each of whom testified pursuant to plea agreements. With respect to Thompson in particular, Ferguson testified that Thompson asked him to receive 150 kilograms of cocaine on his behalf in the Bahamas in May 2011, which represented a portion of a larger shipment of cocaine that was to be transported from Maracaibo, Venezuela on board a Hawker aircraft. The Hawker shipment was ultimately unsuccessful because the pilots were detained in Venezuela.

Jose Polonia Vergara testified that after the pilots were detained, he worked with Thompson to get the plane released. Polonia Vergara confirmed that the aircraft detained in Maracaibo was registered in the United States because the tail number began with the letter "N,"[5] and he confirmed that the plan was to use that airplane to traffic cocaine. In a May 8, 2011 call with Polonia Vergara, Thompson asserted control over the Hawker aircraft: "the only person who

---

4  Because the post-trial motions can be decided based only on a subset of the evidence in this case, the Court will not summarize the voluminous trial record. The Court will cite to the docketed transcripts to the extent that they have been filed on the docket, but many of the transcripts have not yet been docketed, and so, for that testimony, the Court relies on the draft transcripts and its own recollection and notes.

5  Steven J. Tochterman of the Federal Aviation Administration testified about the registration of airplanes in the United States. He stated that every aircraft must have a tail number, and that every tail number of an aircraft registered in the United States must begin with the letter "N." Tochterman Tr. (Mar. 22, 2017, AM session) [Dkt. # 240-3] at 37:19–22; *see also* 14 C.F.R. § 45.23(a) ("Each operator of an aircraft must display . . . aircraft marks consisting of the Roman capital letter 'N' (denoting United States registration) followed by the registration number of the aircraft.").

gives the authorization for that car[6] to leave is me." GX 1.75;[7] *see also* GX 1.24 (Thompson tells another drug trafficker, "I brought a Hawker to Venezuela. I'm the only guy who parked one in . . . Maracaibo").[8]

There was further evidence of an effort involving Thompson and Knowles from approximately May 2011 to December 2012 to use a U.S.-registered airplane to traffic cocaine.

Knowles was tasked with working with his nephew, Dario Davis, to secure an airplane. *See* GX 1.44 (phone call in which Thompson rejects Knowles's request that Thompson call Davis, because "it's your nephew . . . you deal with your nephew").[9] In approximately May 2010, Knowles asked Davis to assist him in locating an aircraft with a capacity to hold ten passengers and a range of 1500 nautical miles. As Davis commenced his search, he and Knowles exchanged a number of emails and telephone calls about various aircraft, the majority of which, Davis testified, were registered in the United States. On May 16, 2011, Knowles called Davis and told him to search for either a King Air 200 or 300. Davis testified that he received an email from[10]

---

6    Each of the co-conspirators testified that the use of the word "car" in the recorded conversations was a code for the word "airplane."

7    "GX" refers to the government's trial exhibits.

8    Polonia Vergara also testified about a plane that was being held by law enforcement authorities in Punto Fijo, Venezuela. Polonia Vergara explained that Thompson asked for Polonia Vergara's assistance to retrieving the plane, and that "Russ," an associate of Thompson's, provided the tail number of the airplane, which was registered in the United States, to Umberto, an associate of Polonia Vergara's.

9    Thompson also referred to "the nephew," Davis, in a call with Omero. GX 1.47. Thompson explained to Omero that Davis was working directly with Knowles – who Omero referred to on a first name basis – "Dwight." On that same call, Omero referred to Davis by name, and explained that he will coordinate payment with Knowles and "Dario."

10    While defendant Knowles denied using that email address, on a motion for a judgment of acquittal, the Court is required to view the evidence in the light most favorable to the prosecution. *Musacchio*, 136 S. Ct. at 715, quoting *Jackson*, 443 U.S. at 319.

7

Knowles dated May 18, 2011 which contained three tail numbers, including N157PA; Knowles stated in the email "you can use any of these." GX 2.05.

On May 26, 2011, Davis emailed Knowles pictures of a number of airplanes, including airplanes registered in the United States. GX 2.06. And in a phone call with Knowles on October 7, 2011, in response to Knowles's request for "the tail number for the 19-year-old" that co-conspirator Trevor Ferguson "was supposed to get," Davis recited, "[o]ne five seven . . . Poppa . . . Alpha," which Davis testified was a reference to N157PA.[11] GX 1.11. Davis testified that the "19-year-old" was code for a Beechcraft 1900, and that N157PA was a Beechcraft 1900.

Further, in a call between Thompson and an individual on the suppliers' side, Omero, dated April 23, 2012, Thompson described Davis's efforts to secure an airplane. GX 1.47. Thompson explained to Omero that Davis was working directly with Knowles. *Id.* Omero then stated that he would coordinate payment with Knowles and "Dario." *Id.*

In the end, the co-conspirators operating at defendants' behest boarded a U.S.-registered plane with plans to fly it to Haiti, where they would be joined by a pilot working for the drug suppliers and then fly the plane to a location selected by the suppliers, with the goal of loading the plane with cocaine in Venezuela and flying it to Honduras. But N157PA and its crew were detained in Haiti. At that point, on May 28, 2012, Knowles acknowledged his connection to the plane when he complained to Thompson: "You know how hard I try to . . . get a car with them? And I finally get the car, they go f*** it right up." GX 1.63.

---

11  Davis explained that, in talking with Knowles, there was often no need to specify the "N" in the tail number because it was assumed that the plane would be registered in the United States.

All of this evidence is sufficient to enable a rational trier of fact to find that an agreement existed between the defendants and others to distribute, or possess with the intent to distribute, five kilograms or more of cocaine on board an airplane registered in the United States.

It is true that the parties jointly proposed that the jury be instructed as follows:

> I instruct you that the defendants need not know that the narcotics would be or were possessed on board an aircraft owned by a United States citizen or registered in the United States. If the Government proves that the aircraft was owned by a United States citizen or registered in the United States, that itself is enough.

Jury Instructions [Dkt. # 234] at 39. This may have exceeded what the government was required to prove in this case, but in any event, the evidence supported a finding by the jury that at least one airplane used by the conspiracy in this case was in fact registered in the United States.

Davis testified that when he and Ferguson arrived at an airport in Nassau, Bahamas on May 24, 2012 to pilot an aircraft from the Bahamas to Haiti, a co-conspirator pointed out a plane with the tail number N157PA. Davis and Ferguson were to fly the plane to Haiti, pick up an additional pilot, fly to Apures, Venezuela to pick up the cocaine, and deliver the cocaine to Honduras. Davis testified that the plane that he and Ferguson ultimately flew from the Bahamas to Haiti was N157PA, and it was the same model that he had described to his uncle – a Beechcraft 1900.

Agent Tochterman explained that to register an aircraft in the United States, the owner of the aircraft or the owner's designee must submit a bill of sale and an Aircraft Registration Application form to the FAA, and must pay the $5 fee. Tochterman Tr. at 36:22–37:9. Operators of airplanes must also possess a certificate of airworthiness, which Agent Tochterman likened to an inspection certification for a motor vehicle; it certifies that an airplane registered in the United States has, as of a particular date, been deemed airworthy. *Id.* at 37:23–38:9. Through Agent Tochterman's testimony, the government introduced the registration forms and airworthiness

9

certifications for a number of U.S.-registered airplanes. In particular, FAA records established that an aircraft with the tail number N157PA was registered in the United States on January 30, 2012, and its registration expired on January 31, 2015. *See* Tochterman Tr. at 49:23–50:8; GX 5.70 at 23. The registration paperwork also established that the N157PA tail number was registered to a Beechcraft 1900C aircraft. Tochterman Tr. at 50:13–16.

Agent Tochterman also testified that, in addition to reviewing the paper records of the airplane with tail number N157PA, he also reviewed photographs of that airplane. Tochterman Tr. at 68:3–8; GX 4.01a. He testified that the photographs confirmed that an aircraft with the tail number N157PA appeared to be a Beechcraft 1900. Tochterman Tr. at 68:3–12; GX 4.01a. Tochterman also testified that he had seen the N157PA aircraft in person on ten or twelve occasions in 2012 and 2013, and that the logo and color scheme matched the information contained in FAA's records and in the photographs. *Id.* at 98:12–18, 102:7–21.

On cross examination, Tochterman testified that most airplanes have a data plate on their exterior, and the serial number of the aircraft would appear on the data plate. Tochterman Tr. at 89:4–18. In response to a hypothetical posed by the defense, Tochterman conceded that an owner of an aircraft could paint a fake tail number onto an aircraft. *Id.* at 90:3–8.

Thompson seizes on the cross examination of Tochterman and argues that "[t]aking Mr. Tochterman's testimony as a whole it is difficult to determine whether the aircrafts in question were simply designed to appear as United States registered aircraft or not." Def.'s Mem. at 4. But the jury was permitted to assess the credibility of the witnesses and to weigh the evidence. *See Jackson*, 443 U.S. at 319. The jury was presented with Tochterman's testimony, the exhibits from the FAA, and the photographs of N157PA. It was also presented with Davis's testimony about his communications with other members of the conspiracy about particular U.S.-registered airplanes.

So while Thompson attempted to sew doubt in the jurors' minds about whether the plane that Tochterman described was actually N157PA, a rational trier of fact could have found that the FAA records were consistent with the photographs, Tochterman's personal observations of N157PA, and Davis's testimony. And the fact that there could have been additional evidence in the form of the data plate to confirm the pedigree of the N157PA plane does not mean that the evidence adduced was insufficient. The possibility that someone could repaint the tail number on a plane goes to the weight of the evidence, not the sufficiency, and the suggestion is purely speculative in this case in the absence of any evidence that the plane appeared to have been painted over, and given the evidence that the registration documents not only reflect the tail number of the plane, but also the make and model of the N157PA aircraft. Therefore, the Court will deny the Rule 29 motion.

## II. Thompson's Rule 33 motion will be denied for similar reasons.

For many of the same reasons, Thompson's Rule 33 motion will be denied. The Court has considered all of the evidence introduced at trial about the use of U.S.-registered aircraft to traffic narcotics, including the testimony of co-conspirators and government agents, and it has evaluated the witnesses' credibility in light of their demeanor at trial and the internal consistencies in the testimony of multiple witnesses. The Court is persuaded that the weight of the evidence, including, in particular, defendants' own statements on the telephone, strongly favors conviction and no miscarriage of justice occurred.

Although each of the cooperating witnesses readily admitted their involvement in international drug-smuggling conspiracies, and while each cooperator testified pursuant to a plea agreement, their testimony was plausible, convincing, and consistent. Therefore, in an exercise of its discretion, the Court will deny the motion for a new trial.

**CONCLUSION**

For the foregoing reasons, defendant's motion for a judgment of acquittal notwithstanding the verdict, or in the alternative, for a new trial, will be denied. A separate order will issue.

*/s/ Amy B Jackson*

AMY BERMAN JACKSON
United States District Judge

DATE: August 1, 2017